CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 27 2018

JULIA C. DUDLEY, CLERK
BY: /s/ A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| GLEN E. WILDER, JR., <br> Plaintiff, | ) <br> ) <br> ) | Civil Action No. 7:17-cv-00221 |
| v. | ) <br> ) <br> ) | **MEMORANDUM OPINION** |
| JAMES WHITLEY, et al., <br> Defendants. | ) <br> ) | By: Hon. Michael F. Urbanski <br> Chief United States District Judge |

Glen E. Wilder, Jr., a federal inmate proceeding pro se, filed an amended complaint pursuant to 42 U.S.C. § 1983. The Defendants are associated with the Northwestern Regional Adult Detention Center ("Jail"): Superintendent James Whitley, Captain Allen Barr, Nurse Sheila Miller, and Physician Assistant ("P.A.") Robert Dryden. Plaintiff asserts that Defendants failed to provide adequate medical care, in violation of the Eighth Amendment of the United States Constitution. Defendants filed motions for summary judgment, and Plaintiff responded, making this matter ripe for disposition. After reviewing the record, the court grants Defendants' motions for summary judgment.

### I.

Plaintiff lost his balance while walking on a wet floor at the Jail on November 20, 2016, and felt pain in his right knee. Two days later, medical staff examined his knee, noting his range of motion was good, his gait was within normal limits, he tolerated weight bearing without difficulty, his push/pull abilities were "good," and there was mild inflammation on the "superior aspect of the patella." A nurse authorized a knee wrap and ibuprofen, 200 m.g. twice daily for five days. An X ray was taken on December 5th, which revealed mild spurring and medial joint space narrowing but no fracture or dislocation.

Plaintiff met with P.A. Dryden on December 15th. The P.A.'s exam was generally within normal limits, except for a note that the knee was tender to palpation near the patella and that Plaintiff reported limping. P.A. Dryden diagnosed a knee sprain and ordered Naprosyn, 500 m.g. twice a day for 30 days; Flexeril, 10 m.g. twice a day for ten days; and a follow-up in thirty days.

Plaintiff returned to the medical department on January 6, 2017, complaining of increased pain and swelling and noting he had used crutches for the prior two days. The medical exam was generally within normal limits except for reduced motion due to pain. Plaintiff was prescribed Meloxicam, 15 m.g. four times a day for fifteen days, and told to report the efficacy of the treatment.

On January 18th, Nurse Miller responded to Plaintiff's grievance about his dissatisfaction with treatment and wanting an MRI. Nurse Miller reviewed the medical record and replied, noting that Meloxicam needed three to four weeks for full effect and no one had yet authorized an MRI.

On January 26th, Plaintiff had his follow-up appointment about the efficacy of Meloxicam. P.A. Dryden ordered an MRI, a neoprene knee sleeve, and Naprosyn, 500 m.g. twice a day for thirty days. The MRI done on February 3, 2017, revealed an ACL tear, and P.A. Dryden promptly referred Plaintiff to an orthopedist. On February 16th, staff scheduled Plaintiff to visit an orthopedist in March. On February 28, 2017, the Virginia Department of Corrections took custody of Plaintiff and transferred him out of the Jail.

In support of his claims, Plaintiff asserts that he "told Defendants of [his] ongoing pain, swelling, and lack of movement in [his]knee[;] however, Defendants denied [him] proper

2

medical attention and treatment." Plaintiff also complains that Defendants did not offer "physical therapy or surgery to stabilize his knee and repair the tear to [his] ACL."

## II.

A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing admissible evidence and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing–"that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-24. A party is entitled to summary judgment if the admissible evidence as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by the motion for summary judgment. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009).

## III.

Plaintiff asserts that Defendants are liable for their deliberate indifference to his knee injury. The court disagrees and finds that Defendants are entitled to qualified immunity and summary judgment.

A plaintiff must show that a defendant acted with deliberate indifference to a serious medical need to state a claim under the Eighth Amendment for the unconstitutional denial of medical assistance. West v. Atkins, 487 U.S. 42, 48 (1988); Estelle v. Gamble, 429 U.S. 97, 104 (1976); Conner v. Donnelly, 42 F.3d 220, 222 (4th Cir. 1994). A serious medical need is a condition that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). Deliberate indifference requires a state actor to have been personally aware of facts indicating a substantial risk of serious harm, and the actor must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Miltier, 896 F.2d at 851-52. A health care provider may be deliberately indifferent when the treatment provided is so grossly incompetent, inadequate, or excessive as to shock the conscience or is intolerable to fundamental fairness. Id. at 851.

4

P.A. Dryden was not deliberately indifferent to Plaintiff's knee pain and injury. P.A. Dryden's initial exam on December 15, 2016, revealed the knee had no effusion, had full range of motion, and appeared clinically stable. He diagnosed a knee sprain, prescribed naproxen and a muscle relaxant, and ordered a follow-up in thirty days. When he saw Plaintiff next on January 26, 2017, he realized that treatment had not provided sufficient relief, ordered an MRI, prescribed Naprosyn, and gave Plaintiff a neoprene knee sleeve. The MRI was done within two weeks, and he timely referred Plaintiff to an orthopedist for evaluation. However, P.A. Dryden's ability to render any further treatment was abruptly terminated when Plaintiff was transferred from the Jail on February 28, 2017.

Both Nurse Miller and P.A. Dryden explain that most orthopedic injuries are treated progressively and that ordering an MRI is often unnecessary. The deliberate step-by step diagnosis process used with Plaintiff was consistent the treatment of most orthopedic injuries and does not show deliberate indifference. Although the MRI ultimately revealed the hidden ACL injury, any claim of medical malpractice and negligent diagnosis are not cognizable in a § 1983 proceeding. Estelle, 429 U.S. at 105-06; see Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986); Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (noting that treating doctors must actually draw the inference that an inmate's symptoms signify the presence of a particular condition and that a failure to draw such an inference may present a claim for negligence but not a claim under the Eighth Amendment). Similarly, Plaintiff's disagreement about the course of treatment does not state a § 1983 claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). Accordingly, P.A. Dryden is entitled to qualified immunity and summary judgment.

Plaintiff asserts supervisory liability against Superintendent Whitley, Captain Barr, and Nurse Miller. Supervisory liability under § 1983 may not be predicated on the theory of respondeat superior. See, e.g., Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7, 691-94 (1978). Section 1983 requires a showing of personal fault on the part of a defendant either based on the defendant's personal conduct or another's conduct in execution of the defendant's policies or customs. See Fisher v. Washington Metro. Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir. 1982), abrogated on other grounds by Cty. of Riverside v. McLaughlin, 500 U.S. 44, 47 (1991) (finding that § 1983 requires a showing of defendant's personal fault either based on the defendant's personal conduct or another's conduct in execution of the defendant's policies or customs). Similarly, to succeed with an unconstitutional medical treatment claim against non-medical prison personnel, plaintiff must show that the official was personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or was deliberately indifferent to the medical provider's misconduct when even a lay person would understand that the medical provider is being deliberately indifferent. Miltier, 896 F.2d at 854. Supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel. Id.

Plaintiff fails to describe Superintendent Whitley or Captain Barr's personal involvement, policy, or practice, and Nurse Miller's involvement is limited to the single grievance she answered in January 2017. Nothing in her response constitutes deliberate indifference to Plaintiff's pain. Meloxicam had been prescribed recently but needed three to four weeks for full effect, and no MRI had yet to be ordered. Even viewing any inference in a light most favorable to Plaintiff, Nurse Miller's responses do not demonstrate that she was personally aware of facts

indicating a substantial risk of serious harm and recognized the existence of such a risk. Moreover, Plaintiff fails to establish any causal link between Superintendent Whitley, Captain Barr, or Nurse Miller and the treatment of his right knee. See, e.g., Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Accordingly, Superintendent Whitley, Captain Barr, and Nurse Miller are entitled to qualified immunity and summary judgment.

## IV.

For the foregoing reasons, the court grants Defendants' motions for summary judgment.

**ENTER**: This ____ day of June, 2018.

/s/ Michael F. Urbanski
Chief United States District Judge